# EXHIBIT 1

Chancery Division Civil Cover Sheet
Return Date: No return date scheduled
General Chancery Section
Hearing Date: 1/3/2020 9:30 AM - 9:30 AM
Courtroom Number: 2008
Location: District 1 Court
Cook County, IL

**12-Person Jury**

(5/26/16) CCCH 0623

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED
9/5/2019 2:34 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6458156

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

Jada Marsh and Charles Hilson

_____

v.                          Plaintiff

_____

CSL Plasma Inc.

                            Defendant

No. _____2019CH10279_____

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

    A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005 ☐ Administrative Review
0001 ■ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

0007 ☐ General Chancery
0010 ☐ Accounting
0011 ☐ Arbitration
0012 ☐ Certiorari
0013 ☐ Dissolution of Corporation
0014 ☐ Dissolution of Partnership
0015 ☐ Equitable Lien
0016 ☐ Interpleader
0017 ☐ Mandamus
0018 ☐ Ne Exeat

0019 ☐ Partition
0020 ☐ Quiet Title
0021 ☐ Quo Warranto
0022 ☐ Redemption Rights
0023 ☐ Reformation of a Contract
0024 ☐ Rescission of a Contract
0025 ☐ Specific Performance
0026 ☐ Trust Construction
    ☐ Other (specify) _____

By: Brandon M. Wise
■ Atty. No.: 62258 _____ ☐ Pro se 99500
Name: Brandon M. Wise
Atty. for: Plaintiffs
Address: 818 Lafayette Ave., Floor 2
City/State/Zip: St. Louis, MO 63104
Telephone: (314) 833-4827
Primary Email: bwise@pwcklegal.com
Secondary Email: azika@pwcklegal.com
Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice from the *Clerk's Office* for this case at this Email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| JADA MARSH, and CHARLES HILSON and INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Case No.: |
| CSL PLASMA INC. | ) ) | |
| *Defendant.* | ) ) | **JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiffs, Jada Marsh, and Charles Hilson (hereinafter "Plaintiffs"), bring this Class Action Complaint individually and on behalf of all others similarly situated against Defendant CSL Plasma Inc. (hereinafter "CSL Plasma" or "Defendant") to stop Defendant's unlawful collection, use, and storage of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys. Further, Plaintiffs allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are each individual citizens of the State of Illinois.

2. Plaintiffs Jada Marsh and Charles Hilson each donated plasma through one of the Defendant's Illinois-based plasma donation centers within the past year in Hazel Crest, Cook County, Illinois.

3. Defendant CSL Plasma Inc. is a Delaware corporation.

FILED DATE: 9/5/2019 2:34 PM 2019CH10279

4. Defendant CSL Plasma has multiple business locations in Cook County including Chicago, Hazel Crest, and Melrose Park.

## INTRODUCTION

5. Defendant, upon information and belief, mandated and required that plasma donors – like Plaintiffs Jada Marsh and Charles Hilton--to use biometric data when they provided plasma to the Defendant.

6. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – biometrics are unique, permanent biometric identifiers associated with each donor.

7. This exposes Defendant's donors, including Plaintiffs, to serious and irreversible privacy risks.

8. For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax data breach – donors have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

9. In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

10. An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at

https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

11.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html.

12.     As donors of Defendant, Plaintiffs were required to use a biometric finger scanner to donate plasma.

13.     The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act") expressly obligates Defendant to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

14.     BIPA further obligates Defendant to inform its donors in writing that a biometric identifier or biometric information is being collected or captured; to tell its donors in writing for how long it will store their biometric data or information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

15.     BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

16.    There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly.

17.    Defendant captured, collected, received through trade, and/or otherwise obtained and biometric identifiers or biometric information of their Illinois donors, like Plaintiffs, without properly obtaining the above-described written executed release, and without making the required disclosures concerning the collection, storage, use, or destruction of biometric identifiers or information.

18.    Additionally, upon information and belief, Plaintiffs and the Class members are aggrieved because, upon information and belief, Defendant improperly disclosed donors' biometric data to out-of-state third-party vendors in violation of BIPA.

19.    Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data.

20.    Plaintiff and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of their last interactions with the company.

21.    Plaintiffs seek damages and injunctive relief for Defendant's BIPA violations, for themselves and all those similarly situated.

### PLAINTIFFS MARSH'S AND HILSON'S SPECIFIC ALLEGATIONS

FILED DATE: 9/5/2019 2:34 PM 2019CH10279

22.     Within the year proceeding the filing of this action, Plaintiffs Marsh and Hilson donated plasma at one of the Defendant's Illinois-based plasma donation centers within this County.

23.     As plasma donors, Plaintiffs Marsh and Hilson were required to scan at least one fingerprint so Defendant could create, collect, capture, construct, store, use, and/or obtain a biometric template for them.

24.     Defendant then used Plaintiffs Marsh's and Hilso's biometrics as an identification and authentication method to track their plasma donations and identity, potentially with the help of a third-party vendor.

25.     Defendant subsequently stored Plaintiffs Marsh's and Hilson's biometric data in its database(s).

26.     Each time Plaintiffs Marsh and Hilson donated plasma they were required to scan their fingerprint using the biometric device.

27.     Plaintiffs Marsh and Hilson were not informed of the specific limited purposes or length of time for which Defendant collected, stored, or used their biometrics.

28.     Plaintiffs Marsh and Hilson were never been informed of any biometric data retention policy developed by Defendant, nor have they ever been informed of whether Defendant will ever permanently delete their biometrics.

29.     Plaintiffs Marsh and Hilson were never been provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain their fingerprint print(s), handprint, hand geometry, or other biometrics.

30.     Plaintiffs Marsh and Hilson have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

31.     BIPA protects donors like Plaintiffs Marsh and Hilson and the putative Class from this precise conduct, and Defendant had no right to secure this data without complying with BIPA.

32.     Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to private entity securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

### ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

33.     BIPA provides valuable privacy rights, protections, and benefits to plasma donors in Illinois.

34.     For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint and/or finger geometry, the plasma company is capturing, extracting, creating, and recording biometrics; that individuals can keep tabs on their biometric roadmaps (*e.g.,* who has their biometrics, for long how, and how it is being used), including after one's employment or ceases, or after the a private entity stops storing the citizens' biometrics if at all, when files or policies may not be freely accessible; that individuals can evaluate the potential consequences of providing their biometrics; that companies must give individuals the right, and opportunity, to freely consent (or decline consent) before taking their biometrics; that, if the disclosure does not say so, the citizen's biometrics will not be used for any other purpose except for time and attendance and will not be used to run a criminal background check; and that their biometrics are being handled with a measure of security. The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

35.     To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

36.     The law is specifically designed to require a company that collects biometrics to do several things, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

37.     The Act defines "Biometric identifier" as:

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

See, 740 ILCS 14/10.

38.     The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

See, 740 ILCS 14/10.

39.     The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

See, 740 ILCS 14/10.

40.     The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

See, 740 ILCS 14/10.

41.     The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an
employee as a condition of employment

See, 740 ILCS 14/10.

42.     The Act requires:

A private entity in possession of biometric identifiers or biometric information must
develop a written policy, made available to the public, establishing a retention
schedule and guidelines for permanently destroying biometric identifiers and
biometric information when the initial purpose for collecting or obtaining such
identifiers or information has been satisfied or within 3 years of the individual's
last interaction with the private entity, whichever occurs first. Absent a valid
warrant or subpoena issued by a court of competent jurisdiction, a private entity in
possession of biometric identifiers or biometric information must comply with its
established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

43.     Additionally, the Act provides:

No private entity may collect, capture, purchase, receive through trade, or
otherwise obtain a person's or a customer's biometric identifier or biometric
information, unless it first:

(1) informs the subject or the subject's legally authorized representative in
writing that a biometric identifier or biometric information is being collected
or stored;

(2) informs the subject or the subject's legally authorized representative in
writing of the specific purpose and length of term for which a biometric
identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier
or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

44.     Further, the Act provides:

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

45.    The Act also provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

46.    Furthermore, the Act provides:

A private entity in possession of a biometric identifier or biometric information shall:

(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

(2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

740 ILCS 14/15(e).

47.    BIPA provides statutory damages if a private entity takes an citizen's biometrics and invades an that person's privacy by circumventing BIPA's preconditions and requirements.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

48. The Act explicitly provides a private right of action for violations of the Act, and provides that a prevailing party "may recover for each violation:"

> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
>
> (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
>
> (4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20.

49. In enacting BIPA, the Illinois General Assembly explicitly singled out and bound employers to BIPA's requirements. 740 ILCS § 14/10 (defining "Written release" in the context of employment); 740 ILCS § 14/15(b)(3).

50. Defendant violated these clear protections of the Act; Defendant violated, and upon information and belief, continue to violate its individuals' biometric privacy rights.

**DEFENDANT'S BIOMETRIC FINGER-SCANNING OF PLASMA DONORS**

51. At relevant times, Defendant has taken the rather invasive and coercive step of requiring plasma donors to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify to identify the donor.

52. Donors are required to use their biometric scanner when they donate plasma which is literally the life-blood of the Defendant's business.

53. Moreover, Defendant caused these biometrics to be associated with donors.

54. Defendant has a practice of using biometric devices to track its donors, albeit without regard to Illinois' requirements under BIPA.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

55.     As part of the donor donation process, Defendant caused biometrics from finger scans to be recorded, collected, captured, and stored at relevant times.

56.     Defendant has not, on information and belief, properly informed donors in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed donors in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; or obtained donors' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it.

57.     Defendant did not at any time, on information and belief: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiffs' executed written release to have Plaintiffs' biometrics captured, collected, stored, or recorded as a condition of employment or donation – Plaintiffs did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' fingerprint, finger scan, finger geometry, or associated biometrics. Nor did Plaintiffs know or fully understand that Defendant was collecting, capturing, and/or storing biometrics when Plaintiffs were scanning Plaintiffs; fingers; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

58.     Upon information and belief, Defendant has not publicly disclosed its retention schedule and guidelines for permanently destroying biometrics, if they exist.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

59.     Defendant, on information and belief, has no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information.

60.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

61.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

62.     Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric privacy rights, as created by BIPA.

63.     Defendant disregarded these obligations and instead unlawfully collected, stored, and used donor's biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

64.     Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendant's donors have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates his or her biometric data.

65.     Nor are Plaintiffs and the putative Class told whom Defendant currently discloses his or her biometric data, or what might happen to his or her biometric data in the event of a buyout, merger, or a bankruptcy.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

66.     By and through the actions detailed above, Defendant has not only disregard the Class' privacy rights, but it has also violated BIPA.

67.     Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to donors: Defendant has required or coerced them to comply in order to donate plasma.

## CLASS ALLEGATIONS

68.     Plaintiffs bring this action on behalf of themselves and on behalf of two classes defined as follows:

> **Biometric Collection Class:**
> All persons who were enrolled in a biometric system used by Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

> **Plasma Donor Class:**
> All persons who were enrolled in a biometric system used by Defendant for plasma donors while donating plasma to Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

69.     **Numerosity:** The exact number of class members for each class is unknown and is not available to Plaintiff at this time, but upon information and belief, there are in excess of forty potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against those who are currently having their BIPA rights violated.

70.     **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

that may affect individual Class members. Common questions include, but are not limited to, the following:

a.  whether Defendant has a practice of capturing or collecting biometrics;

b.  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

c.  whether Defendant obtained an executed written release from finger scanned individuals before capturing, collecting, or otherwise obtaining biometrics;

d.  whether Defendant obtained an executed written release from finger scanned individuals before capturing, collecting, converting, sharing, storing the biometrics;

e.  whether Defendant provided a writing disclosing to Illinois citizens the specific purposes for which the biometrics are being collected, stored, and used;

f.  whether Defendant provided a writing disclosing to finger scanned individuals the length of time for which the biometrics are being collected, stored, and used;

g.  whether Defendant's conduct violates BIPA;

h.  whether Defendant's conduct was negligent, reckless, or willful;

i.  whether Plaintiffs and Class members are entitled to damages, and what is the proper measure of damages;

j.  whether Plaintiffs and Class members are entitled to injunctive relief.

71.     **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiffs.

72.     **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against current donors bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

### COUNT I – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT
### INDIVIDUALLY AND ON BEHALF OF BOTH CLASSES

73.    Plaintiffs, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

74.    BIPA is a remedial statute designed to protect Illinois citizens, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

75.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

76.    Further, the Illinois Supreme Court, in a unanimous decision made clear that "**Compliance should not be difficult.**" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37 (Jan. 25, 2019).

FILED DATE: 9/5/2019 2:34 PM    2019CH10279

77.    Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirements to **substantial potential liability**, including liquidated damages, injunctions, attorney fees, and litigation expenses **'for each violation' of the law** (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Id.* at ¶ 36 (emphasis added).

78.    "It is clear that the legislature intended for this provision to have substantial force." *Id.* at ¶ 37.

79.    Further, the Illinois Supreme Court has made clear, "**an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act.**" *Id.* at ¶ 40 (emphasis added).

80.    As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation from Defendant as authorized by BIPA. *Id.*

81.    Defendant has been and continues to be a "private entity."

82.    Defendant has been and continues to be a "private entity" in possession of Plaintiffs' biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

83.    As more fully set forth above, at relevant times Defendant collected, captured, or otherwise obtained, Plaintiffs' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

84.    In violation of 740 ILCS 14/15(a), Defendant failed to make such a written policy

publicly available to Plaintiffs and other class members.

85.     In violation of 740 ILCS 14/15(b), Defendant has collected, captured, stored, and/or otherwise obtained Plaintiffs' and other class members' biometric identifiers and biometric information, without:

    a.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

    b.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

    c.  receiving a written release executed by Plaintiff and/or Class members and executed by Plaintiff and/or Class members as a condition of employment or donation.

86.     Defendant took Plaintiffs' and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

87.     As a result of Defendant's above- described acts and omissions, Defendant has invaded the privacy of Plaintiffs and the Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

88.     Accordingly, Defendant has violated the BIPA, and Plaintiffs and the Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A.     Finding this action satisfies the prerequisites for maintenance as a class action set forth in the Federal Rules of Civil Procedure and certifying the both of classes as defined herein;

B.     Designating and appointing Plaintiffs as representative of the class and Plaintiffs undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D.     Awarding Plaintiffs and the Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

E.     Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

F.     Granting all such other and further relief as the Court deems just and appropriate.

### COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT

89.     Plaintiffs, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

90.     BIPA provides for injunctive relief. 740 ILCS 14/20(4).

91.     Plaintiffs and other Class members are entitled to an order requiring Defendant

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

to make disclosures consistent with the Act and enjoining further unlawful conduct.

92.     First, Plaintiffs seeks an order requiring Defendant to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiffs and other persons' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

93.     Second, Plaintiffs seek an order requiring Defendant to disclose whether Defendant has retained Plaintiffs' and other individuals' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

94.     Third, due to the above-described facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered to: (i) disclose if (and if, precisely how, and to whom) it has disseminated, sold, leased, traded, or otherwise profited from Plaintiffs' and others' biometrics, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA. 740 ILCS 14/15(c), (d), (e).

95.     Fourth, Defendant should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

96.     Plaintiffs' and other Class members' legal interests are adverse to Defendant's legal interests. There is a substantial controversy between Plaintiffs and Class members and Defendant warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

97.     Plaintiffs and the Class do not know what Defendant has done (or intends to do) with their biometrics. Absent injunctive relief, Defendant is likely to continue its BIPA non-compliance and Plaintiff and other Class members will continue to be in the dark on the subject.

98.     For the reasons set forth above, Plaintiffs are likely to succeed on the merits of their claims.

99.     BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

100.    The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

101.    As a result, Plaintiffs requests commensurate injunctive relief.

**WHEREFORE**, Plaintiffs, individually and on behalf of the classes they represent, pray for an Order as follows:

A.      Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class defined herein;

B.      Designating and appointing Plaintiffs as representative of the class they represent and Plaintiffs' undersigned counsel as class counsel;

C.      Entering judgment in favor of Plaintiffs and the classes and against Defendant;

D.      Awarding Plaintiffs and the class members all damages available to Plaintiff and the class available under applicable law, including statutory or liquidated damages;

E.   Providing commensurate injunctive relief for Plaintiffs and class members as set

forth above;

F.   Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs

incurred in this litigation; and

G.   Granting all such other and further relief as the Court deems just and appropriate.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 5, 2019

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com

David Fish
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
dfish@fishlawfirm.com

COUNSEL FOR THE PLAINTIFF AND THE
PUTATIVE CLASS

FILED DATE: 9/5/2019 2:34 PM   2019CH10279

Appearance and Jury Demand*          (Rev. 1/21/16) CCG N009

FILED DATE: 9/16/2019 3:26 PM   2019CH10279

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY     DEPARTMENT/ CHANCERY DISTRICT

FILED
9/16/2019 3:26 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

JADA MARSH and CHARLES HILSON

**Plaintiff**

v.

CSL PLASMA, INC.

**Defendant**

No. 2019 CH 10279

Claimed $: _____
6587151

Return Date: _____

Court Date: _____

Room No.: _____

**Address of Court District for Filing**

### APPEARANCE AND JURY DEMAND*

☑ General Appearance    ☐ 0900 - Fee Paid      ☑ 0909 - No Fee
                    ☐ 0904 - Fee Waived    ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand*     ☐ 1900 - Appearance and Jury Demand/Fee Paid
                    ☐ 1909 - Appearance and Jury Demand/No Fee Paid

The undersigned enters the appearance of:   ☑ Plaintiff     ☐ Defendant

Jada Marsh and Charles Hilson

(Insert Litigant's Name)

/s/David J. Fish

Signature

☐ Initial Counsel of Record ☐ Pro Se (Self-represented) 2810 ☐ Rule 707 Out-of-State Counsel (pro hac vice)
☑ Additional Appearance    ☐ Substitute Appearance

☑ Atty. No.: 44086      ☐ Pro se 99500

Name: The Fish Law Firm P.C.

Atty. for: Plaintiff

Address: 200 E. 5th Avenue, Suite 123

City/State/Zip Code: Naperville, IL 60563

Telephone: (630) 355-7590

Primary Email: dfish@fishlawfirm.com

Secondary Email: admin@fishlawfirm.com

Tertiary Email: _____

> **Important**
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

Attorney for   ☐ Plaintiff ☐ Defendant

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/16/2019 3:26 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6587151

FILED DATE: 9/16/2019 3:26 PM   2019CH10279

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| JADA MARSH and CHARLES HILSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2019 CH 10279 |
| v. | ) ) ) | |
| CSL PLASMA, INC., | ) ) | |
| Defendants. | ) ) | |

## <u>NOTICE OF FILING</u>

PLEASE TAKE NOTICE that September 16, 2019, I filed with the Circuit Court of Cook County, Chicago Illinois the **<u>Appearance of The Fish Law Firm, P.C.</u>**, a copy of which is attached hereto and hereby served upon you.

Dated: September 16, 2019

Respectfully submitted,

**JADA MARSH and CHARLES HILSON,** individually and on behalf of all others similarly situated,

By:  /s/   David Fish_____
One of his Attorneys

David J. Fish
Kimberly Hilton
John Kunze
THE FISH LAW FIRM, P.C.
200 E 5th Ave Suite 123
Naperville, Illinois 60563
T: 630-355-7590
F: 630-778-0400
Email: dfish@fishlawfirm.com
Cook County Firm ID#: 44086

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/19/2019 1:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6638122

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| JADA MARSH AND CHARLES HILSON<br>EACH INDIVIDUALLY AND ON<br>BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>*Plaintiffs,*<br><br>v.<br><br>CSL PLASMA INC.<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2019CH10279<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

In this case, Plaintiffs Jada Marsh and Charles Hilson (hereinafter collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege that Defendant CSL Plasma Inc. (hereinafter "Defendant") systematically violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiffs seek to certify a class consisting of numerous former and current similarly-situated plasma donors that donated to Defendant in the State of Illinois who had their fingerprint unlawfully procured, collected, captured, received, otherwise obtained, or disclosed by Defendant during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiffs' claim and the claims of similarly-situated individuals all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified. Notably, to Plaintiffs' Counsels' knowledge, the only BIPA class certification decisions issued to date have granted class certification. See, *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018)

FILED DATE: 9/19/2019 1:22 PM 2019CH10279

(granting class certification); and Ex. A, Mem. and Order, *Roberson v. Symphony Post Acute Care Network, et al.*, 17-L-733 (St. Clair County) (same).

Plaintiffs move for class certification to protect members of the proposed class, plasma donors whose proprietary and legally protected personal and private biometric data was invaded by Defendant. Plaintiffs believes that the evidence and argumentation submitted with this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiffs requests that the Court allow Plaintiffs to supplement their briefing and defer the response and reply deadlines.

## I.     **RELEVANT BACKGROUND**

### A. **The Biometric Information Privacy Act**

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or
>     biometric information is being collected or stored;

2

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

FILED DATE: 9/19/2019 1:22 PM  2019CH10279

     (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

     (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

Although there may be benefits with using biometric devices, there are also serious risks. Biometrics, including fingerprints, are unique, permanent biometric identifiers associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax and Uber data breaches – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

**B.  Factual Allegations**

Plaintiffs filed a class action complaint against Defendant on September 5, 2019, to redress Defendant's unlawful collection, use, storage, and disclosure of biometric information of their plasma donors under BIPA. In their Class Action Complaint, Plaintiffs provided detailed allegations that Defendant's Illinois donors, like plaintiffs, were and continue to be universally required to scan their fingerprint for enrollment in the plasma donor database, but are not: (1) informed of any biometric data retention policy developed by Defendant; (2) never been informed

3

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

whether Defendant will permanently delete their biometrics; and (3) never provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain their fingerprint(s), handprint, hand geometry, or other biometrics, as required by BIPA. *See* Complaint ("Compl.") at ¶¶ 27-29.

Plaintiffs donated their plasma at Defendant's Hazel Crest location in the State of Illinois. *Id.* at ¶ 2. As plasma donors, Plaintiffs were required to scan their fingerprint so Defendant could use it to track when they donated in their database. *Id.* at ¶¶ 12. Each time Plaintiffs donated their plasma, they were required to scan their fingerprint using the biometric device. *Id.* at ¶ 12. However, Defendant captured, collected, received through trade, and/or otherwise obtained and biometric identifiers or biometric information of their Illinois donors, like Plaintiffs, without properly obtaining a written executed release and without making the required disclosures concerning the collection, storage, use or destruction, of biometric identifiers or information. *Id.* at ¶¶ 17. Defendant has not, on information and belief, properly informed donors in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed donors in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, store, and used; or obtained donors' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it, as required by BIPA. *Id.* at ¶¶ 56. Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, plasma donors, including Plaintiffs, have no idea whether Defendant will sell, disclose, re-disclose, or otherwise disseminate their biometric data. *Id.* at ¶ 58-59. Finally, Defendant never secured a written release executed by their plasma donors, including Plaintiffs,

4

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

permitting it to collect, store, and use plasma donors' biometric data, as required by BIPA. *Id.* at ¶¶ 57.

Accordingly, Defendant's practices violated BIPA. As a result of Defendant's violations, Plaintiffs and similarly-situated individuals were subject to Defendant's uniform policies and practices and were victims of their scheme to unlawfully collect, store, and use plasma donors' biometric data in direct violation of BIPA.

Plaintiffs now seek class certification for the following similarly-situated individuals, defined as:

> All persons who were enrolled in the biometric system and subsequently used a biometric system while plasma donors for Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

*Id.* at ¶ 78.

Given Defendant's standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiffs now move for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before the Defendant responded. For the reasons discussed herein, Plaintiffs' request should be granted.

## II.    STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

(1) the class is so numerous that a joinder of all members is impracticable;

(2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.   ARGUMENT

Plaintiffs' claims here are especially suited for class certification because Defendant treated all of its plasma donors identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, and use of their biometric data that Defendant required as a condition of donating plasma throughout the class period. Plaintiffs meet each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A.   The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

faith, nonspeculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

   In the present case, there can be no serious dispute that Plaintiffs meet the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable.[1] As result of Defendant's violations of BIPA, Plaintiffs and all similar-situated individuals were subject to Defendant's uniform policies and practices and were victims of Defendant's schemes to unlawfully collect, store and use their extremely personal and private biometric data in direct violation of BIPA. The precise number in the class cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records. A review of Defendant's files regarding the collection, storage and use of plasma donors' biometric data performed during the class period is all that is needed to determine membership in Plaintiffs' proposed classes. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendant's objection that "the proposed class was not ascertainable, because the process of reviewing defendant's transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40

---

[1]    Upon information and belief, Defendant has numerous plasma donors.

(6th Cir. 2012)[2] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, No. 08-CV-1184-PHX-DGC, 2009 U.S. Dist. LEXIS 75353, at \*20-21 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery"). Once Defendant's records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, Defendant's plasma donors may never know that their legal rights have been violated and as a result may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiffs and all other similarly-situated individuals have a means of redress against Defendant for their widespread violations of BIPA.

**B.** **Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

---

[2]    "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is the culpable conduct of the Defendant under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregarded Plaintiffs' and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, and used their biometric data in direct violation of BIPA. Specifically, Defendant has violated BIPA because they failed to: (1) inform Plaintiffs or the putative class in writing of the specific purpose and length of time for which their biometrics were being collected, stored, and used, as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the putative class's biometrics, as required by BIPA; and (3) receive a written release from Plaintiffs or the putative class to collect, capture, or otherwise obtain their biometrics, as required by BIPA. Defendant treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. In fact, the legality of Defendant's collection, storage, and use of their plasma donors' biometric data is the focus of this litigation.

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

Indeed, once this Court determines whether Defendant's practice of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendant's violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiffs' claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

**C.**     **The Named Plaintiffs and Class Counsel Are Adequate Representatives of The Class.**

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiffs' interest arises from statute. The class representatives, Jada Marsh and Charles Hilson, are members of the proposed class and will fairly and adequately protect the class's interests. Plaintiffs, as a condition of donating their plasma, were required to scan their fingerprint to enable Defendant to use it as an authentication method to track their time. Defendant subsequently stored Plaintiffs' fingerprint-based biometrics in their database(s). Each time Plaintiffs donated their plasma, they were required to scan their fingerprint. Plaintiffs have never been informed of the specific limited purposes (if any) of length of time for which Defendant collected, stored, or used their fingerprints. Plaintiffs have never been informed of any biometric data retention policy developed by Defendant, nor have they ever been informed

of whether Defendant will ever permanently delete any stored biometrics. Finally, Plaintiffs have never been provided nor did they ever sign a written release allowing Defendant to collect, store, or use their biometrics. Thus, Plaintiffs were victims of the same uniform policies and practices of Defendant as the individuals they seek to represent and are not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiffs have the interests of those class members in mind, as demonstrated by their willingness to sue on a class-wide basis and step forward as the class representative, which subjects him to discovery. This qualifies them as conscientious representatives as plaintiffs and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Peiffer Wolf Carr & Kane, APLC ("PWCK"), will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B, PWCK Firm Resume). PWCK attorneys, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

**D.    A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

11

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

Here, Plaintiffs' claim stems from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

E.    **In The Event The Court Or Defendant Seeks More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendant's practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiffs a supplemental brief, and defer Defendant's response and Plaintiffs' reply. Plaintiffs are moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiffs are also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiffs' full arguments are set forth based on

12

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.   <u>Conclusion</u>

For the reasons stated above, Plaintiffs respectfully requests that the Court enter an Order: (1) certifying Plaintiffs' claims as a class action; (2) appointing Plaintiffs Jada Marsh and Charles Hilson as Class Representatives; (3) appointing Peiffer Wolf Carr & Kane as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiffs to supplement this briefing, and defer response and reply briefs.

Date:   September 19, 2019

Respectfully Submitted,

By: /s/ Brandon M. Wise
Brandon M. Wise – #6319580
Paul A. Lesko - #6288806
**PEIFFER WOLF CARR & KANE, APLC**
818 Lafayette Ave., Floor 2
St. Louis, Missouri 63104
314.833.4825
bwise@pwcklegal.com
plesko@pwcklegal.com

David Fish
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, IL 60563
630.355.7590
dfish@fishlawfirm.com

### CERTIFICATE OF SERVICE

The undersigned counsel hereby states that on September 19, 2019, I filed this document with the Clerk of the Court using the Illinois efiling system. This system will provide notice and

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

allow access to all counsel of record. In addition, a file-stamped copy of the foregoing document will be provided to opposing counsel, via email, once received.

*/s/ Brandon M. Wise*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/19/2019 1:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6638122

FILED DATE: 9/19/2019 1:22 PM  2019CH10279

# EXHIBIT B

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

# PEIFFER WOLF CARR & KANE, APLC

Peiffer Wolf Carr & Kane, APLC ("PWCK") was founded in 2013. Joseph Peiffer, PWCK's managing partner, previously was a litigation partner at Fishman Haygood, LLP in New Orleans. PWCK handles a wide variety of cases, including a variety of collective, class, and mass actions. Since its inception, PWCK has acquired talented attorneys from coast to coast, becoming a national litigation firm.

MAIN OFFICE
201 St. Charles Avenue, Suite 4314
New Orleans, LA 70170
Phone: 504-523-2434

ST. LOUIS OFFICE
818 LAFAYETTE AVE., FLOOR 2
St. Louis, MO 63104
Phone: 314-833-4827

CLEVELAND OFFICE
1422 Euclid Avenue, Suite 1610
Cleveland, OH 44115
Phone: 216-589-9280

LOS ANGELES OFFICE
5042 Wilshire Blvd. #304
Los Angeles, CA 90036
Phone: 415-766-3545

SAN FRANCISCO OFFICE
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: 415-766-3544

ROCHESTER OFFICE
1150-J Pittsford-Victor Road, 1st Floor
Pittsford, NY 14534
Phone: 585-310-5140

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

## ATTORNEY PROFILES

**Brandon Wise** joined the firm after managing his own solo practice that focus on class, collective, and employment matters. Brandon has successfully litigated collective and class action cases in St. Louis, Southern Illinois, and Central Illinois. Brandon has served as class or collective counsel in the following resolved collective and class matters:

*Volz, et al. v. Provider Plus, Inc., et al.,* a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert within hours of its submission to the court.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. Mr. Wise secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a class-wide settlement of $550,000 for a class of 75 employees.

*Volz v. Tricorp management Company, et al.,* a FLSA collective in class action where Mr. Wise was appointed Class Counsel. The parties reached a $350,000 settlement for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

*Morris v. Imperial Towers Condominium Assn.,* Biometric Information Privacy Act ("BIPA") class action settlement approved naming Brandon Wise as Class Counsel. The $120,000 settlement for 60 class members is one of the highest BIPA class settlements per class member in the country.

Brandon currently serves as class or putative class counsel in other matters, as well.

**Paul Lesko** joined PWCK in August of 2016, co-founding the St. Louis office of the firm with Brandon Wise. His practice consists of representing individuals, startups, and small companies that have been harmed by larger corporations. With his biotech background, Paul focuses on prosecuting complex technological cases, including patent and class actions. Paul has specific experience litigating GMO crop cases as well as cases focusing on pesticide and herbicide technologies.

**Joseph Peiffer** is the managing member of PWCK. His practices consist of representing individuals and institutions that have been harmed by investment banks and brokerage firms, prosecuting ERISA class actions, and representing victims of labor trafficking and those who have suffered catastrophic injury. He has co-authored a

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

treatise Litigating Business and Commercial Tort Cases, which is published by Thompson West.

Joe has also taught and lectured extensively. He co-created and taught a class entitled Storytelling and Advocacy at Loyola Law School. Also, at Loyola Law School, he has taught a course entitled "The Basics of Arbitration" and he also serves as an adjunct professor teaching Trial Advocacy. He has guest lectured at Tulane Law School in its Securities Regulations class and Syracuse Law School on securities arbitration. He has spoken at many national conventions on a variety of topics including prosecuting large, multi-client claims, broker's deficient advice to retire and FINRA arbitration.

Joe has represented hundreds of individual retirees against their brokers in FINRA arbitration. The highlights of this practice include representing 32 Exxon retirees in a 90-day FINRA arbitration against Securities America that resulted in a $22 million verdict — one of the largest ever awarded by a FINRA arbitration panel. He has also represented hundreds of Xerox and Kodak retirees against their broker resulting from the broker's fraudulent advice to retire and subsequent unsuitable investments. He has represented hundreds of families in cases involving private placements and Ponzi schemes.

His financial services fraud practice also includes representing hospitals and municipalities around the country in cases involving their issuance of auction rate securities. He also serves as co-lead counsel on several ERISA class actions against large financial services firms alleging that they did not prudently invest retirement money and had conflicts of interest. He also is on the plaintiffs' steering committee in a nationwide antitrust class action involving the illegal tying of cable set-top boxes to the provision of premium cable services. Joe also currently represents hundreds of clients in cases involving serious injuries sustained by pharmaceutical products.

Finally, he represents victims of human trafficking and labor exploitation. In one such case, the plaintiffs have alleged that the defendants have failed to pay overtime, improperly deducted for employee housing, and held the plaintiffs passports while in the United States. He has travelled extensively to the Philippines for this case and another one involving a rig explosion where two of his clients working on a rig owned by Black Elk exploded.

Joe was one of three Louisiana lawyers ranked by Chambers USA for securities litigation in 2011. He has been named a 2013 Rising Star by his peers in the Class Action Administration organization. He has been quoted by USA Today, Wall Street Journal, the Associated Press, New York Times, New York Daily News, The Los Angeles Times, Business Week, Investment News, and many other publications. Mr. Peiffer has also appeared on CNN. He was named as one of the fifty Leaders in Law by New Orleans City Business Magazine.

He has also successfully risen into the leadership of several national bar associations. He twice served as the chairman of the Business Torts Section of the American Association for Justice. He currently serves as President of PIABA – a nationwide bar association of lawyers that represent individuals and institutions in arbitrations to recover money lost by investment banks and brokerage firms.

Joe graduated from Tulane School of Law, cum laude, in 1999. While at Tulane, he served on the Tulane Law Review and was involved with the Tulane Legal Assistance Program. Prior to attending Tulane, he graduated from Bowling Green State University in 1996 with a degree in communications.

**Adam Wolf** has developed a national reputation as a leading appellate, complex litigation, and civil rights litigator. He successfully argued a case in the United States Supreme Court, *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), that defined the scope of the Fourth Amendment regarding strip searches in public schools. The Court's opinion in *Safford* marked the first time in forty years that the Supreme Court ruled in favor of a student who claimed that her school violated her constitutional rights. For his efforts in this case, Mr. Wolf was named Attorney of the Year in California by California Lawyer Magazine.

Mr. Wolf has argued in numerous federal and state courts of appeals, in addition to the United States Supreme Court. He has represented groups and individuals whose constitutional rights have been violated, organizations who seek to vindicate their rights, and governmental entities who were harmed by corporate misconduct.

Mr. Wolf has lectured around the country regarding constitutional law and civil rights. He has been quoted in hundreds of domestic and international newspapers, including the New York Times, Washington Post, Los Angeles Times, USA Today, and Wall Street Journal. Additionally, Mr. Wolf has appeared on numerous television and radio programs, including Good Morning America, CBS Evening News, ABC World News, NBC Nightly News, CNN Headline News, National Public Radio, and the BBC.

Mr. Wolf has been appointed to leadership positions in numerous class actions and mass actions throughout the country.

**Daniel Carr** represents a diverse client base in a variety of commercial disputes, complex litigation, and arbitration. Daniel handles numerous state and federal lawsuits for individuals and businesses, and he currently represents investors, and municipalities in FINRA arbitration proceedings. Together with Joe Peiffer, Daniel also serves as co-counsel in several ERISA and antitrust class action lawsuits and represents individuals in litigation involving pharmaceutical products, labor exploitation, fraudulent investments, and wrongful death.

4

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

Daniel is a member of several nationwide bar associations, including PIABA (Public Investors Arbitration Bar Association), and he previously served on the board of directors of the Business Torts Section of the American Association for Justice.

Daniel received his law degree from Tulane School of Law, summa cum laude, in 2006. While at Tulane, he was elected Senior Articles Editor for the Tulane Law Review, and he worked as a fellow in the Legal Analysis Program. Following law school, Daniel was privileged to serve as a law clerk to Judge Jacques L. Wiener, Jr., on the United States Court of Appeals for the Fifth Circuit.

**Jason Kane** is a securities attorney practicing out of the firm's Upstate New York office. He has extensive experience representing investors in Financial Industry Regulatory Authority arbitrations and New York State Courts.

Jason graduated from the State University of New York at Geneseo in 2004 having earned his B.A. in Economics. Thereafter, Jason attended the Syracuse University College of Law, and received his Juris Doctorate, Cum Laude, in 2007.

While attending the Syracuse University College of Law, Jason served as a form and accuracy editor for the Syracuse Journal of International Law and Commerce. He also gained valuable experience as a student law clerk for Magistrate Judge George H. Lowe and served as a volunteer at the United States Attorney's Office in the Northern District of New York where he assisted the Assistant United States Attorneys prosecute their cases.

Jason has represented hundreds of investors in Upstate New York and around the country in some of the highest profile securities cases originating out of Upstate New York. He has recovered millions of dollars in FINRA arbitration and mediation while representing individuals against their former brokers and brokerage firms. He often assists his victimized clients through the regulatory investigations that result from the large scale scams perpetrated by their unscrupulous brokers.

### REPRESENTATIVE CASES

PWCK attorneys were appointed class counsel or serve as counsel in numerous class and collective actions, including:

*Whitley, et al. v. J.P. Morgan Chase & Co., et al.*, a class action lawsuit on behalf of retirement investors against J.P. Morgan Chase & Co. and various other J.P. Morgan entities over the sale and administration of the JP Morgan Stable Value Fund. Received preliminary approval for a class wide settlement of $75 million.

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

*Volz, et al. v. Provider Plus, Inc., et al.,* a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert.

*Nevarez v. Forty Niners Football Company,* a certified class action, on behalf of nearly 5,000 class members with mobility disabilities who were denied equal access to Levi's Stadium in violation of the Americans with Disabilities Act.

*Baricuarto, et al. v. Industrial Personnell and Management Services, Inc. et al.,* a human trafficking case that required extensive travel and litigation in the Philippines, and resulted in a multi-million dollar settlement.

*In re Pacific Fertility Center Litigation,* a putative class action on behalf of nearly 1,000 people whose embryos were compromised in a freezer tank at a fertility center.

*Amador v. California Culinary Academy,* representing a certified class of former students of for-profit school California Culinary Academy regarding class members' student loans.

*Bilewicz v. FMR LLC,* a case brought on behalf of current and former employees of Fidelity Investments, alleging that Fidelity violated ERISA by offering exclusively high-fee Fidelity mutual fund products in its retirement plan and by repeatedly adding funds to the plan with little or no track record. Plaintiffs further alleged that the Fidelity plan's fees are very high for a multi- billion dollar plan, and Fidelity has failed to follow sound fiduciary practices for multi-billion dollar plans. This case was successfully settled, and PWCK was approved as co-class counsel in that action.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. PWCK secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a proposed class-wide settlement of $550,000 for a class of 75 employees.

*Volz v. Tricorp management Company, et al.,* a FLSA collective in class action where PRW Legal attorney was appointed class counsel. Settled for $350,000, for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

*Hanson v. Berthel Fisher & Company Financial Services, Inc., et al.,* a securities class action filed on behalf of investors in a real estate investment program that raised approximately $26 million from the investing public. Claims were predicated upon the role played by Berthel Fisher, the managing broker-dealer of the program that allegedly organized and oversaw the securities offering by the Program while aware of misrepresentations and

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

omissions in the Program's offering documents.

*Booth et al. v. Strategic Realty Trust, Inc., et al.*, a securities class action where plaintiffs contended that throughout the offering period, the Strategic Realty Trust offering materials contained materially inaccurate and incomplete statements about the company's investment strategy, internal controls, and governance mechanisms. Plaintiffs alleged that their investments lost value as a result of defendants' acts and omissions.

*Thieriot v. Celtic Ins. Co.*, a certified class action where settlement was approved on behalf of a class of people who were overcharged by a health insurer in violation of state law.

PWCK currently serves as counsel for plaintiffs in numerous other class and mass actions, including:

*In re: FedLoan Student Loan Servicing Litigation*, 2:18-md-02883 (E.D. Penn.) consolidated multi-district litigation involving one of the nation's largest student loan servicers. Attorney Brandon Wise was appointed to the Plaintiffs' Executive Committee.

*In re: Dicamba Herbicides Litigation*, 1:18-md-02820-SNLJ (E.D. Mo), consolidated multi-district litigation involving the alleged unlawful release of a genetically modified seed and herbicide system.

*Albers, et al. v. Delloite & Touche LLP, et al.*, a mass securities action where PWCK represents over 100 investors with claims exceeding $100 million in action alleging violations of state securities laws.

*Yao-Yi Liu et al. v. Wilmington Trust Company*, a class action lawsuit on behalf of investors of a fraudulent scheme against Wilmington Trust alleging that Wilmington Trust breached its duties as an escrow agent and aided the perpetrators of the scheme.

*In re Platinum and Palladium Antitrust Litigation*, a case involving claims against BASF Metals, Goldman Sachs, HSBC, and Standard Bank. Plaintiffs allege that Defendants were involved in an unlawful price-setting process of platinum and palladium in violation of the Sherman Act.

*Fouts v. Bank of Nova Scotia, New York Agency et al.*, a class action filed on behalf of holders of debt with interest rates linked to the US Treasuries auction rates, alleging violations of the federal antitrust and commodities laws arising from manipulation of the prices of Treasury securities and related financial instruments through collusion by the primary dealers of U.S. Treasury Department securities.

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

*In re Fidelity ERISA Float Litigation*, a case involving claims brought by participants in various ERISA plans administered by Fidelity, on behalf of those plans, alleging that Fidelity violated ERISA by improperly using "float" income received as interest on plan assets to pay itself fees and failing to crediting the amount of that float income to the plans or their participants.

*American Chemicals & Equipment Inc. 401(K) Retirement Plan v. Principal Management Corporation, et al.*, a case involving claims brought by ACE 401(k) Plan, on behalf of the shareholders of six mutual funds, against the investment advisors for those funds. Plaintiff alleges that the defendants breached their statutory fiduciary duty under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), by charging unfair and excessive fees for their advisory services and retaining excess profits derived from economies of scale.

*Jennifer Roth v. Life Time Fitness, Inc.*, a class action lawsuit filed on behalf of fitness instructors seeking unpaid wages for work that was required by Defendants. Plaintiff alleges that fitness instructors were not compensated for the work they performed before and after fitness classes.

*Carol Prock v. Thompson National Properties, LLC, et al.*, a securities class action filed on behalf of investors in the TNP 6700 Santa Monica Boulevard, a real estate investment program that raised approximately $17 million from the investing public. Claims are predicated upon alleged material misrepresentations and omissions in the program's offering documents by its sponsor and officers and directors of the sponsor.

*In re Dental Supplies Antitrust Litigation*, a class action lawsuit filed on behalf of dental practices, orthodontic practices, and dental laboratories alleging that the country's three largest distributors of dental supplies and equipment agreed not to compete on price and caused injury to plaintiffs in the form of artificially inflated prices.

*Matthew Fero et al. v. Excellus Health Plan Inc.*, a class action lawsuit filed on behalf of plaintiffs whose personal information was compromised as a result of a data breach that is alleged to have gone undetected for a 600-day period.

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/19/2019 1:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6638122

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

# EXHIBIT A

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on            )
behalf of all others similarly situated,         )
                                                 )
Plaintiff,                                       )
                                                 )          Case No. 17 -L- 733
v.                                               )
                                                 )
SYMPHONY POST ACUTE CARE                         )
NETWORK; SYMPHONY SYCAMORE                       )          ┌─────────────────────┐
LLC; SYMPHONY HEALTHCARE LLC;                    )          │       FILED         │
SYMPHONY M.L. LLC; SYMPHONY                      )          │  ST. CLAIR COUNTY   │
MONARCH HOLDINGS, LLC; and DOE                   )          │                     │
DEFENDANTS 1-100,                                )          │    MAR 1 2 2019      │
                                                 )          │                     │
Defendants.                                      )          │ 35    CIRCUIT CLERK │
                                                            └─────────────────────┘

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1] The Court hereby **ORDERS**:

**I.      NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois. Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA"). Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

1

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id.* at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers

or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

Plaintiff alleges none of these requirements were met when capturing her biometric information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . against an offending party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network"). She seeks to certify a class of Illinois citizens who had their biometric information or biometric identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

## II.     LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

## III.    FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

4

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV. SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2]  Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case.  All class members are citizens of Illinois.  All are proceeding principally under a single Illinois statute, BIPA.  Each was subjected to an identical course of conduct by defendants:  The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

a. Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra*, the Court also does not consider which class members will ultimately prevail.  "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549.  *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

FILED DATE: 9/19/2019 1:22 PM    2019CH10279

authorized representative?

e.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.    Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.    whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

b.      whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.      whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.      whether that injury exceeds the liquidated damages provision in BIPA,

e.      whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.      whether that entity acted negligently or willfully with respect to that particular class member,

g.      whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019). As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification. "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same). At most, if damage questions do present significant issues, they can be handled in ancillary proceedings. "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

App. 3d at 548 (internal quotations omitted).   In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58.  This is not that case.  This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way:  Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so?  These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest.  First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification.  "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549.  *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

9

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V.    THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

two components:  (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981).  As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate.  Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson.  The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive.  Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members.  Her deposition responses did not contradict that.  In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein.  Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI. FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline. This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously established, it is not the province of the Court to decide these issues on a motion to certify a class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability." Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea. Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities. Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network. Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

simply begs the questions this lawsuit will answer.  Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions.  The Court has reviewed all of these materials.  The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law.  The Court further finds that many of these arguments go to the merits of the case.  As such, the Court will not resolve them on a motion for class certification.  Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it.  Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

## VII.    ORDER AND FINDINGS.

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018).  The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

FILED DATE: 9/19/2019 1:22 PM   2019CH10279

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE:** March 12, 2019.

Hon. Kevin T. Hoerner

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/15/2019 4:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

6968426

2120 - Served                    2121 - Served
2220 - Not Served                2221 - Not Served
2320 - Served By Mail            2321 - Served By Mail
2420 - Served By Publication     2421 - Served By Publication
**Summons - Alias Summons**                    (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Jada Marsh and Charles Hinson
_____
                        (Name all parties)      Case No.    2019CH10279
                                                         _____
                        v.

CSL Plasma Inc.
_____

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant: C T Corporation System, 208 So LaSalle St., Suite 814, Chicago, IL 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of
which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty
(30) days after service of this Summons**, not counting the day of service. To file your answer or
appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate
this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to
the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief
requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service,
with endorsement of service and fees, if any, immediately after service. If service cannot be made,
this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30)
days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**        **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

FILED DATE: 10/15/2019 4:17 PM   2019CH10279

Atty. No.: 62258

Atty Name: Brandon M. Wise

Atty. for: Jada Marsh and Charles Hilson

Address: 818 Lafayette Ave., Floor 2

City: St. Louis

State: MO   Zip: 63104

Telephone: (314) 833-4825

Primary Email: bwise@pwcklegal.com

Witness: 10/15/2019 4:17 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:
(To be inserted by officer on copy left with Defendant or other person):

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 10/15/2019 4:17 PM  2019CH10279

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/21/2019 8:54 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH10279

## AFFIDAVIT OF PROCESS SERVER

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

7028145

**JADA MARSH** and **CHARLES HINSON**

v

**Case No. 2019 CH 10279**

**CSL PLASMA, INC.**

I, Bryant Hogan, being first duly sworn, depose and say that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served **Summons, Class Action Complaint, Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues, Exhibits A and B** on the within named defendant, **CSL Plasma, Inc.** by serving the **Registered Agent, CT Corporation System** and informed him of the content therein on **October 17, 2019.**

Service completed per the following:

Corporate: **CT Corporation System**

**208 So LaSalle St, Suite 814 on the 17th Flr, Chicago, IL 60604**

**October 12, 2019 at 1:25 pm**

Subscribed and sworn to before me
this 17th day of October, 2019

*Bryant Hogan*
Bryant Hogan, Private Investigator
Hogan Investigative Services, Inc
7529 N Oakley Ave, Unit 1
Chicago, IL 60645
IL Agency #117.001699

*Tina R. Hogan*
NOTARY PUBLIC (ILLINOIS)

OFFICIAL SEAL
TINA R. HOGAN
Notary Public - State of Illinois
My Commission Expires 8/21/2021

FILED DATE: 10/21/2019 8:54 AM  2019CH10279