IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JADA MARSH and CHARLES HILSON, individually and behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>CSL PLASMA INC.,<br><br>        Defendant. | Case No. 1:19-CV-07606<br><br>Honorable Edmond C. Chang<br><br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM**
**IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
**FISH POTTER BOLAÑOS, P.C.**
200 E. 5th Ave., Suite 123
Naperville, IL 60563
312-861-1800
dfish@fishlawfirm.com
mara@fishlawfirm.com

Brandon M. Wise
Paul A. Lesko
**PEIFFER WOLF CARR & KANE, APLC**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825
bwise@pwcklegal.com
plesko@pwcklegal.com

*Attorneys for Plaintiffs and*
*Others Similarly Situated*

I. **Introduction**

Plaintiffs Jada Marsh and Charles Hilson's (collectively "Plaintiffs") filed this action against Defendant CSL Plasma Inc.'s ("CSL") (collectively the "Parties") for violating the Biometric Information Privacy Act ("BIPA), 740 ILCS 14/1 et seq. On June 8, 2022, this Court granted preliminary approval of the Parties' $9,900,000.00 non-reversionary class action Settlement under the Biometric Information Privacy Act ("BIPA") that Judge Wayne Anderson (Ret.) helped resolve. (Dkt. No. 119).

Following preliminary approval, the Settlement Administrator notified Settlement Class Members of their rights under the Settlement, including the right to submit a claim for payment, request exclusion, or submit an objection. The vast majority of Settlement Class Members have received at least one form of Court-approved Class Notice. Not a single Settlement Class Member objected to the Settlement and only two requested exclusions from it by the deadline. The high claims rate (over *three times* what is typical), lack of objections, and minimal exclusion rate underscore the strength of the Settlement.

II. **Legal Background and Procedural History**

Plaintiffs set forth the legal background and procedural history of this case in their previous Settlement approval filings. (Dkt. Nos. 115 & 120).

III. **Summary of Settlement Terms**

The terms of the Settlement are set forth in <u>Exhibit 1</u> and are briefly summarized here:

A. **Class Definition**
(Ex. 1, Settlement Agreement, §§ 1.26, 7.2)

The Plaintiffs seek preliminary approval of the following Settlement Class:

All individuals who scanned their finger at a CSL plasma donation facility in Illinois as part of a plasma donation process between September 5, 2014 and October 16, 2019.

There are 74,821 Settlement Class Members. *See* Exhibit 2, Declaration, ¶ 5.

**B.     Settlement Fund; Allocation of the Fund; Payments to Class Members**
(Ex. 1, Settlement Agreement, §§ 1.28, 7.2)

While denying all liability and wrongdoing, Defendant has agreed to pay a non-reversionary Gross Settlement Fund of $9,900,000 to resolve the claims in this case on a class action basis. The "Net Fund" is the Gross Settlement Fund minus the following deductions, which are subject to the Court's approval of Plaintiffs' Motion for Settlement Class Counsel's attorney fees and costs (Dkt. No. 120): Settlement Class Counsel's attorney fees and costs; the Settlement Administrator's Expenses; and the Plaintiffs' Incentive Awards. The Net Fund shall be distributed pro rata to Class Members who timely return valid claim forms ("Class Participants"). If the Settlement is approved as presented, each Settlement Class Participant will receive an estimated $254.42.[1] *See* Exhibit 2, Declaration of Caroline P. Barazesh, Analytics Consulting, LLC, at ¶ 5.

**C.     Uncashed Checks Will Be Distributed to a *Cy Pres* Recipient**
(Ex. 1, Agreement, § 2.1(h))

Settlement Class Participants will have 150 days to cash their settlement payments. Funds from checks not cashed by the deadline will be divided equally between Prairie State Legal Services and the American Red Cross of Greater Chicago for disaster and other community support as the *cy pres* recipients. However, Plaintiffs expect few uncashed checks because Settlement Class Participants must first submit a claim form to receive payment and provide their current address. Or, Settlement Class Participants could elect to receive electronic payment, which obviates the need to cash a check.

---

[1]     The estimated pro rata payment to Claimants is calculated as the Net Settlement Fund/Number of Approved Claims = $254.42.

    **D.**     **Defendant's Representations of Compliance with BIPA**
          (Ex. 1, Settlement Agreement, § 2.2)

Defendant represents that since November 15, 2021, it has been in full compliance with BIPA.

    **E.**     **Release of Claims** (Ex. 1, Settlement Agreement, § 3.1)

Plaintiffs are not providing a general release. Rather, Settlement Class Members who do not exclude themselves from this Settlement will release the Released Parties from all claims arising out of the BIPA or related to their biometric privacy rights, including relating to Defendant's alleged collection, possession, capture, purchase, receipt through trade, obtaining, sale, profit from, disclosure, redisclosure, dissemination, storage, transmittal, and/or protection from disclosure of alleged biometric information or biometric identifiers through the use of finger scanners or kiosks at Defendant's Illinois facilities in connection with the plasma donation process.

    **F.**   **Settlement Administration**
          (Ex. 2, Declaration of Settlement Administrator)

Analytics Consulting, LLC ("Settlement Administrator") has administered the Class Notice and claims process and will administer the remainder of the Settlement. Plaintiffs' Motion for Attorney Fees and Costs, filed on May 17, 2022, requested $158,620.78 in Settlement Administrator's costs. (Dkt. No. 120). *See also* Exhibit 2, Declaration, ¶ 18.

    **G.**     **The Notice Process Was Successful**
          (Ex. 2, Declaration of Settlement Administrator, ¶¶ 18.

The Settlement Administrator implemented a robust class notice program to ensure that Settlement Class Members learned of their rights in the Settlement. As a result, the claims rate is high. The Claim Form deadline was November 3, 2022. Exhibit 2, Declaration, ¶¶ 13-14. As of November 14, 2022, 33.66% of Settlement Class Members on the Class List submitted a timely, valid, or accepted Claim Form for a total of 25,186 individuals. *Id.* ¶ 16.

3

The Federal Trade Commission in 2019 issued a report that analyzed claim rates in class action litigation. *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns.*[2] The FTC's study demonstrated a median Claims rate of 10%. (*Id*. at 21), which is substantially less than what Plaintiffs achieved here.

The high notice and claims rate were achieved with the following notice program: On June 27, 2022, Defendant's Counsel provided the Settlement Administrator with the mailing list ("Class List") containing Class Members' names, phone numbers, Social Security Numbers, and last known mailing addresses where available. *Id.* ¶ 5. The original Class List contained data for 74,821 Class Members. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* at ¶ 6. The Settlement Administrator also conducted a reverse append mail email address search to identify additional email addresses for Class Members. *Id.* ¶ 7. On July 6, 2022, the Settlement Administrator provided multiple forms of Notice to the Settlement Class Members, via mail and email, where available. *Id.* ¶ 9.

First, the Settlement Administrator successfully mailed the Class Notice and tear-off Claim Form with prepaid postage ("Notice Packet") to Settlement Class Members via Direct Mail. *Id.* ¶¶ 4, 9. The Notice Packet described Class Members' legal options, identified their estimated recovery amount, and described how they could obtain more information about the Settlement. Second, the Settlement Administrator sent an email with a link to the website to available Class Member email addresses. *Id.* ¶ 9. Third, the Settlement Administrator established a case website where a Spanish version of the Notice was also available. *Id.* On September 6, 2022, the Settlement

---

[2]Available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (Last Visited November 15, 2022)

Administrator sent a reminder email with a link to the case website. *Id.* ¶ 11.

Out of 74,821 Class Members, 67,247 Class Members (89.87%) received Notice by either of mail, email or both. *Id.* ¶ 12. Following this comprehensive Notice program, no objections were received and only two requests for exclusion were received by the August 22, 2022 deadline. *Id.* ¶¶ 17-18.

      **H.**      **Incentive Awards** (Ex. 1, Settlement Agreement, § 8.2)

Consistent with the Settlement Agreement and Class Notice, Plaintiffs are requesting that the Court award the Settlement Class Representatives $5,000 each as Incentive Awards for their work in prosecuting this lawsuit on behalf of the Settlement Class. Without brave individuals willing to stand up and serve as Class Representatives, it is unlikely anyone would have sued the Defendant on an individual basis because of the small amount per person available recovery. As represented in the Class Notice, the Settlement Administrator posted a copy of the Motion for Incentive Awards on the Settlement website during the objection/exclusion period so that Settlement Class Members could evaluate the request when deciding how to exercise their rights.

      **I.**      **Attorney Fees and Costs** (Ex. 1, Settlement Agreement, § 4.1)

Plaintiffs filed a request for attorney's fees of $3,323,308.85 and costs of $23,308.85 on August 4, 2022. (Dkt No. 120). The requested fee amounts to one-third of the Settlement Fund and is less than the 35% called for in the Settlement Agreement. Consistent with Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs filed their request for fees and costs during the Class Notice process and provided a copy to the Settlement Administrator so that Class Members could request a copy when deciding whether to object to the settlement or exclude themselves from it. *See* https://plasmasettlement.com/important-case-documents/ (last visited November 11, 2022).

## IV. The Court Should Grant Final Approval

The Court preliminary approved the parties' settlement on June 8, 2022. (Dkt. No. 119). Plaintiffs now request that the Court grant final settlement approval, the final step for approval of a class action settlement.

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected
class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this motion, Plaintiffs request that the Court take the final step in the process by granting final approval of the proposed Settlement.

By way of comparison, settlements in other statutory privacy class actions frequently do not come near this amount, either in terms of raw numbers or percentage of available relief. *See*

6

*e.g., In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim); *Adkins v. Facebook, Inc.,* 18-cv-05982-WHA, Dkt. Nos. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs); *Carroll v. Crème de la Crème, Inc.,* 2017 CH 01624 (Cir. Ct. Cook Cnty. June 25, 2018) (BIPA settlement providing only credit monitoring).

Even narrowing the comparison to the BIPA settlements that create non-reversionary funds, this Settlement is favorable. Indeed, the per-person monetary relief achieved here is among the best in a BIPA case of this size—*i.e.*, those with at least tens of thousands of class members. *See Prelipceanu v. Jumio Corp.*, 2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for approximately 260,000 class members); *Miracle-Pond v. Shutterfly*, 2019 CH 07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Thome v. NOVAtime Tech., Inc*., No. 19-cv-6256, Dkt. No. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members, and assignment of insurance policy); *Figueroa v. Kronos*, 2019-CV-01306 (N.D. Ill. Feb. 10, 2020) ($15.2 million for 171,643 class members).

Furthermore, as discussed in Plaintiffs' prior approval filings, this case is comparable in terms of size and settlement amount of other plasma center cases that recently received final approval. *Crumpton v. Octapharma Plasma. Inc.*, 19-cv-08402, Dkt No. 88 (N.D. Ill.) (Judge Kendall finally approved a $9,987,380 non-reversionary settlement fund split *pro rata* of for claimants from a 76,824-person class); *Phillips, et al. v. Biolife Plasma, LLC*, 2020 CH 05658 (Cir. Ct. Cook Cty.)(Judge Wilson of Cook County finally approved a $5,994,233.00 non-

7

reversionary Settlement Fund for two Settlement Classes of approximately 57,525 total Illinois blood plasma donors).[3] Other approved BIPA settlements of similar size and significance (*i.e.* tens of thousands of class members) have created a non-reversionary fund distributed *pro rata* without predetermined caps or reversion. *E.g.*, *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, Dkt. No. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members). Another finally approved, claims-made BIPA settlements provided a capped payment, with the remaining funds reverting to the defendant. *E.g.*, *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) (preliminarily approving $36 million fund for approximately 1,110,000 class members, and capping class member payments at $200 or $60 depending on date of finger scan and payout occurring over several years).

    **B.**    **Approve Is Appropriate Under Rule 23(e)(2)**

        **1. The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)**

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of

---

[3] The undersigned attorneys were also finally approved as class counsel in *Biolife Plasma* and *Octapharma Plasma.*

discovery completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863 (7th Cir. 2014*)* (internal quotations omitted).

Settlement Class Counsel and the Settlement Class Representatives pursued this case vigorously on behalf of the potential class. The interests of the Class Representatives have remained aligned with the Class. Class Counsel briefed and defeated Defendant's Motion to Dismiss, served written discovery requests, reviewed tens of thousands of documents, briefed and defeated a Motion to Stay, served third-party discovery, and succeeded on Motions to Compel. The immense amount of investigation and discovery undertaken by Plaintiffs' counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. At two mediations and in follow-up negotiations, including a mediator's recommendation, Class Counsel negotiated a settlement that obtains meaningful non-reversionary monetary relief, and with an appropriate release of claims.

### 2. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of neutral mediator and retired Judge Wayne Andersen of JAMS. The Parties ultimately accepted Judge Andersen's mediator's recommendation after the conclusion of a second full-day mediation. *See Wong*, 773 F.3d at 864 (affirming settlement approval and finding no "suspicious circumstances" where the parties negotiated with the assistance of an experienced third-party mediator); *Cooks v. TNG GP*, No. 2:16-cv-01160- KJM-AC, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) ("The parties' participation in mediation 'tends to support the conclusion that the settlement process was not collusive.'").

9

### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

The final and most important factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). The Class Representatives claim that they and potential Class Members are entitled to $1,000 per violation if they are able to prove Defendant's alleged violations of the BIPA were "negligent." 740 ILCS 14/20(1). The $9,900,000.00 Gross Fund represents an estimated net recovery of $254.42 per Claimant. The Settlement represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

The Court should further evaluate the adequacy of relief based on the sub-factors, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies. Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment. *Id.*

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursuing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018

amendment. As discussed in Plaintiffs' Motion for Preliminary Approval, no appellate court has ruled on the unique plasma-center defenses (such as, for example, federal preemption and whether they were collecting for healthcare purposes). The Settlement here meets this requirement because it provides relief to Settlement Class Members now, at a rate similar to other BIPA settlements of its size, while avoiding years of protracted litigation.

Further, the applicable statute of limitations for BIPA claims is still in the balance. This Settlement provides relief to Class Members in the largest possible statute of limitations. There are two appeals currently pending before the Illinois Supreme Court relevant to the statute of limitations for BIPA claims. The *Tims v. Black Horse Carriers, Inc.,* 184 N.E.3d 1029 (Ill. 2022), appeal pending before the Illinois Supreme Court, concerning the applicable statute of limitations, is fully briefed, and oral argument took place on September 22, 2022. Oral argument took place in the *Cothron v. White Castle System Inc.*, Case No. 128004, appeal pending before the Illinois Supreme, concerning the question of accrual, on May 17, 2022. No opinion has been issued.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii) and the first Seventh Circuit factor. An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement provides relief directly to Class Members who submit a timely and valid claim form. The claims structure negotiated with no reversion, carries substantial benefit to the class and fully satisfies Rule 23(e)(2)(C)(ii).

The final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement's contemplated method of calculating

attorneys' fees (*i.e.*, the percentage-of-the-fund method) and its limit on attorneys' fees (*i.e.*, one-third of the Gross Settlement Fund) are reasonable and predicated on the outstanding relief provided to the Settlement Class. Accordingly, that the Settlement permits the Court to award one-third of the Gross Settlement Fund in attorneys' fees is more than appropriate.

      **C.    The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.**

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

There were no objections to the Settlement, and only two requests for exclusion out of tens of thousands of Class Members. This represents a favorable reaction from the Class. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). Similarly, the high claims rate indicates a strong positive reaction from the Class. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 629 (describing 22% claims rate in BIPA case as "an unprecedentedly positive reaction by the class"); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (discussing expert testimony that response rates in claims-made class action settlements "generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"); *Sullivan*

12

*v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3rd Cir. 2011) (*en banc*) (noting that claims rate in consumer class action settlements "rarely exceed seven percent").

Plaintiffs' counsel recommends this Settlement without hesitation. *See* Dkt. No. 120-4 at pars. 9-10 That recommendation is based on Class Counsel's substantial experience in class litigation, including dozens of similar BIPA class actions. That knowledge and experience were applied in analyzing the possible recovery against the risk, cost and delay explained above. *See Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) ("The court also was entitled to 'rely heavily on the opinion of competent counsel' advanced by the proponents") (citation omitted).

The Settlement presents no red flags. It was negotiated at arm's length during two arduous mediation sessions with Judge Wayne Anderson (Ret.) and entered upon acceptance of the mediator's recommendation. The attorney fee requested is in line with other BIPA settlements of its kind, and no money is reverting to the Defendant.

## VI. CONCLUSION

Because the Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without the Settlement, the Court should grant final approval and enter the proposed Final Approval Order, which will be submitted to the Court via its proposed order email address, and is attached hereto as Exhibit 3.

Dated: November 16, 2022            Respectfully submitted,

/s/ David Fish
One of Plaintiffs' Attorneys

David Fish (dfish@fishlawfirm.com)         Brandon M. Wise (bwise@pwcklegal.com)
Mara Baltabols (mara@fishlawfirm.com)      Paul A. Lesko (plesko@pwcklegal.com)
Fish Potter Bolaños, P.C.                  Peiffer Wolf Carr & Kane, APLC
200 East 5th Avenue, Suite 123             818 Lafayette Ave., Floor 2
Naperville, IL 60563                       St. Louis, MO 63104
(312) 861-1800                             (314) 833-4825

*Attorneys for Plaintiffs and Others Similarly Situated*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on November 16, 2022, which will serve a copy on all counsel of record.

/s/ David Fish
*One of the Attorneys for Plaintiffs*
